**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTAN ELISABETH HELTON, | ) | CASE NO. 3:13-CV-00941 |
| | ) | |
| Plaintiff, | ) | JUDGE ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | | |

Plaintiff, Christan Elisabeth Helton ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

On April 29, 2010, Plaintiff protectively filed an application for SSI, alleging a disability onset date of January 1, 2010. (Tr. 10.) The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id*.) On April 17, 2012, an ALJ held Plaintiff's hearing. (*Id*.) Plaintiff appeared, was represented by an attorney, and testified. (*Id*.) A vocational expert

("VE") also testified. (*Id*.) On May 14, 2012, the ALJ found that Plaintiff was not disabled. (Tr. 7.) On February 25, 2013, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision. (Tr. 3.) On April 25, 2013, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this matter. (Doc. Nos. 12, 13.)

Plaintiff asserts the following assignments of error: (1) the ALJ improperly weighed the opinion of Plaintiff's treating physician; (2) the ALJ erred in finding that Plaintiff had past relevant work; (3) the ALJ's hypothetical question to the VE did not incorporate all of Plaintiff's mental limitations; (4) the ALJ failed to define moderate limitations and failed to use the VE's testimony based on defined moderate limitations; and (5) the ALJ failed to consider favorable evidence and did not consider the entire record.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in April 1979 and was 31-years-old on the date she filed her application. (Tr. 26.) She had at least a high school education and was able to communicate in English. (*Id.*) She had past relevant work as a hospital/nursing home cleaner. (Tr. 27.)

### B. Medical Evidence[1]

#### 1. Medical Reports

---

[1] The ALJ found that Plaintiff experiences medical determinable physical impairments that are "not severe" individually and in combination within the meaning of the Regulations. (Tr. 13.) Plaintiff does not challenge that conclusion in her Brief.

2

The record includes progress notes from Center Street Community Health Clinic ("Center Street") from March 29, 2010, to November 9, 2010, where Plaintiff received routine gynecologic examinations and medication for bipolar disorder, panic attacks, anxiety, depression, obsessive compulsive disorder (OCD), and attention deficit hyperactivity disorder (ADHD). (Tr. 164-170, 175-178.) Records show that plaintiff did not show up for four scheduled visits at Center Street between April 2010 and August 2010. (Tr. 165.)

Records from Center Street April 13, 2010, show that Plaintiff reported that her medications were working for her because her mood was better and her anxiety symptoms had improved. (Tr. 166, 177.)

**2. Agency Reports**

**a. Dr. Swearingen**

On November 2, 2010, T. Rodney Swearingen, Ph.D., performed a consultative evaluation of Plaintiff. (Tr. 137-142.) Plaintiff was clean, neatly dressed, and cooperative, and Dr. Swearingen did not observe any fine or gross motor skill impairment. (Tr. 138-139.) Plaintiff reported symptoms of depression, sleep disturbances, poor appetite, low energy, crying spells, mood swings, irritability, paranoia, hallucinations, and panic attacks. (Tr. 140-141.) She reported that she had been diagnosed with bipolar disorder and depression with severe psychotic features, but denied any mental health hospitalizations. (Tr. 138.) Plaintiff stated that she had never been hospitalized for a mental health condition. (*Id.*) She had previously been involved in outpatient counseling but stopped going due to financial problems. (*Id.*)

She denied suicide attempts but reported having suicidal thoughts. (*Id.*) She reported getting anxious and nervous and having panic attacks. (Tr. 139.) Plaintiff also claimed to hear the voices of her children when they are not there and seeing dark shadows. (*Id.*) She stated that she was suspicious of others and did not trust anyone. (*Id.*)

Plaintiff stated that her marriage "has its ups and downs." (Tr. 137.) She had four children, three of whom lived with her and were her husband's children. (*Id.*) She reported having been arrested one time for petty theft. (Tr. 138.) Plaintiff denied any history of drug or alcohol problems but stated that she had used marijuana in the past because it calmed her down. (*Id.*) She denied the use of street drugs for the past three months. (*Id.*) She showed Dr. Swearingen her prescriptions for Zoloft and Visteril, but claimed she did not have the financial means to have her medication filled. (*Id.*)

Plaintiff reported that her most recent job was at a nursing home where she did janitorial work. (*Id.*) She claimed that she quit her job because she was too slow doing her work. (*Id.*) She stated that she was unable to work because she could not work at a job and also be a mother. (*Id.*) Plaintiff's activities included getting her children ready in the morning, taking them to school, running errands, watching television, and using the internet. (Tr. 140.) She had one friend with whom she socialized. (*Id.*) She also socialized with her husband's family. (*Id.*) She cleaned, cooked, and shared shopping responsibilities with her husband. (*Id.*)

On examination, Plaintiff was alert and responsive and oriented to person, place, and time. (Tr. 139.) She had no difficulty understanding or following instructions. (Tr. 140.) Her insight and judgment were impaired. (*Id.*) Dr. Swearingen's diagnoses

included major depressive disorder, recurrent severe with psychotic features; panic disorder without agoraphobia; and a Global Assessment of Functioning ("GAF") score of 54.[2] (*Id.*)

### b. Dr. Rivera

On December 27, 2010, state agency psychological consultant A. Rivera, Psy.D., completed a Psychiatric Review Technique form. (Tr. 149-162.) Dr. Rivera found that Plaintiff had affective and anxiety-related disorders that did not manifest at listing level severity. (Tr. 149, 159-160.) Dr. Rivera found that Plaintiff was moderately limited in her activities of daily living, ability to maintain social functioning, and ability to maintain concentration, persistence, or pace. (Tr. 159.)

That same day, Dr. Rivera completed a Mental Residual Functional Capacity Assessment based upon his review of Plaintiff's record. (Tr. 145-148.) Dr. Rivera found that Plaintiff was moderately limited in ten areas: carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination with or proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the

---

[2] The GAF scale incorporates an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health illness devised by the American Psychiatric Association. A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

5

general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and responding appropriately to changes in the work setting. (Tr. 145-146.) Dr. Rivera opined that Plaintiff had the functional capacity to perform simple, routine tasks in a static work setting with superficial social interactions. (Tr. 147.)

**C.     Hearing Testimony**

   **1.     Plaintiff's Testimony**

Plaintiff was married and lived in a house with her husband and three children. (Tr.194.) The jobs she had that lasted three months or longer included a cashier job and a job in infant care. (Tr. 196.) Plaintiff had attended a joint vocational school for early childhood education. (*Id.*) She left her job in infant care because she did not have time to work and care for her children and because she got married and moved. (Tr. 197.) Later in her testimony, Plaintiff stated that she left her job because her employer did not think she was doing the job correctly and therefore asked her to leave. (Tr. 209.) Plaintiff had also worked at a nursing home cleaning residents' rooms for about two months. (Tr. 211.) Her training for that job took one day. (*Id.*)

Plaintiff testified that she could not work because she had anxiety in public places and because her attention deficit disorder caused difficulty concentrating. (Tr. 197-198.) Plaintiff also stated that she had bipolar disorder mixed with severe psychotic features, reactive detachment disorder, depression, panic attacks, and obsessive compulsive disorder. (Tr. 198-200.) Plaintiff took medication to help with her anxiety and depression. (Tr. 201.)

Plaintiff testified that on a typical day, she made her husband lunch and got him off to work, got her children up and ready for school, took her son to the bus stop, took her daughters to their school on the opposite side of town, watched television, and did basic chores like sweeping and dusting. (Tr. 203, 205.) She visited with people once a week and her best friend came to see her. (Tr. 203.) She acknowledged that she attended parent-teacher conferences. (Tr. 205.) Her hobbies included collecting Boyd's Bears and Longaberger Baskets. (Tr. 204.)

When asked whether there was something special about her alleged disability onset date of January 1, 2010, Plaintiff stated that there was not. (Tr. 206.)

**2. VE Testimony**

Lynn Kauffman, a vocational rehabilitation consultant, testified at Plaintiff's hearing as a vocational expert. (Tr. 214.) The VE described Plaintiff's work during the past 15 years as follows: retail cashier (light and semi-skilled); daycare worker/nursery worker (light and semi-skilled); telephone solicitor (sedentary and unskilled); hospital/nursing home cleaner (middle and unskilled); and gas station cashier (light and unskilled). (Tr. 216-217.) The VE testified that Plaintiff performed all of these jobs long enough to learn the techniques, acquire the information, and develop the facility needed for average performance on the job. (Tr. 217.)

The ALJ asked the VE to consider a hypothetical individual with Plaintiff's education and past relevant work who had no exertional limitations and could understand simple and some complex instructions and sustain attention to complete tasks where production quotas were not critical. (Tr. 217.) The individual could tolerate the public, coworkers, and supervisors with limited interpersonal demands in an object-

7

focused work setting. (Tr. 218.) The individual could adapt to routine changes in a static work setting. (*Id.*) The VE opined that the hypothetical individual could perform Plaintiff's past work as a hospital cleaner or nursing home cleaner, but none of Plaintiff's other past jobs, as they required more interaction with people. (*Id.*) The VE also opined that the individual could perform the following unskilled jobs: cleaner (approximately 20,000 jobs statewide and 500,000 nationally); packager (approximately 12,500 jobs statewide and 325,000 nationally); and sorter (approximately 2,500 jobs statewide and 75,000 nationally). (Tr. 218-219.)

When questioned by Plaintiff's counsel, the VE testified that an individual who was off-task at least 20 percent of the time would not be able to maintain a job. (Tr. 220.)

### III.  STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled

8

by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. Based on Plaintiff's earning records, she has not engaged in substantial gainful activity since April 29, 2010, the application date.

2. Based on the objective medical evidence, Plaintiff has the following severe combination of impairments: a major depressive disorder and a panic disorder.

9

3. Based on the objective medical evidence, Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels. Mentally, the claimant retains the capacity to understand and remember simple and some complex instructions and sustain attention to complete tasks where production quotas are not critical. She can tolerate the public, co-workers, and supervisors with limited interpersonal demands in an object-focused work setting and adapt to routine changes in a static work setting.

5. Based on Plaintiff's residual functional capacity, she can perform her past relevant work as a hospital cleaner.

6. Plaintiff was born in 1979 and was 31-years-old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. Plaintiff has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not she has transferable job skills.

9. Considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that she can perform.

10. Because Plaintiff can perform her past relevant work as a hospital cleaner, she has not been under a disability as defined in the Act since April 29, 2010, the date the application was filed.

11. Alternatively, because jobs exist in significant numbers in the national economy that the claimant can perform, she has not been under a disability as defined in the Act since April 29, 2010, the date the application was filed.

(Tr. 12-28.)

**LAW & ANALYSIS**

    **A.**    **Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

    **B.**    **Plaintiff's Arguments**

        **1. The ALJ Improperly Weighed the Opinion of Plaintiff's Treating Physician.**

Plaintiff argues that the ALJ erred by failing to assign proper weight to the assessments of Plaintiff's treating physician. For the following reasons, Plaintiff's argument has no merit.

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). Conversely, a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).

Plaintiff has failed to persuade this Court that the ALJ erred in his treatment of the medical opinions of record.³ On March 30, 2010, Dr. Oni noted that Plaintiff

---

³ In her Brief on the Merits, Plaintiff does not note which physician's opinion the ALJ allegedly discounted. Plaintiff argues: "In the instant case, the ALJ discounted the assessments of Ms. Helton's attending physician, which indicated that Ms. Helton suffers from depression, bipolar disorder with severe psychotic features, ADHD, OCD, and panic attacks. (Record at 163-172, 174-180)." (Plaintiff's Brief ("Pl.'s Br.") at 4.) Since the citations Plaintiff includes are to treatment records from Hafusat Oni, M.D., this Court will assume that Plaintiff is arguing that the ALJ erred in assessing the findings of Dr. Oni.

12

suffered from depression, bipolar disorder with severe psychotic features, ADHD, OCD, and panic attacks. (Tr. 167.) Given the brevity and lack of explanation accompanying Plaintiff's first assignment of error, this Court can only assume that Plaintiff is arguing that because Dr. Oni diagnosed her with the aforementioned disorders, the ALJ was required to accommodate those diagnoses in her determination of Plaintiff's residual functional capacity ("RFC") and include them in her hypothetical to the VE. This is incorrect. It is well established that the "mere diagnosis" of a condition "says nothing" about its severity, or its effect on a claimant's ability to perform work. *Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)*. Plaintiff has not addressed any records from Dr. Oni or any other "attending physicians" indicating not only that Plaintiff has a diagnosed impairment, but also that she has associated functional limitations that could render her disabled. Thus, the fact that a physician diagnosed Plaintiff with certain mental disorders did not, alone, require the ALJ to include limitations specifically related to those diagnoses in Plaintiff's RFC or include those impairments in his hypothetical question to the VE. Accordingly, Plaintiff has failed to show what impact, if any, the ALJ's alleged mistreatment of the medical opinions of record had on the outcome of her case.

Furthermore, to the extent Plaintiff argues that the ALJ violated the treating physician rule as to Dr. Oni, Plaintiff has not presented an adequate analysis of the issue that merits an extensive discussion by this Court. Here, Plaintiff did not explain how the ALJ violated the treating physician rule. As Dr. Oni did not render any opinions regarding Plaintiff's functional limitations in relation to her diagnosed impairments, it appears that Plaintiff may be arguing that the ALJ erred by giving less than controlling

13

weight to Dr. Oni's diagnoses and treatment notes. Such an assertion is unfounded. A review of the ALJ's decision shows that he specifically considered these progress notes when determining whether Plaintiff had any severe impairments or combination of impairments. (Tr. 12.) He explained that Plaintiff's primary care physicians diagnosed her with ADHD, OCD, and bipolar disorder, but that there was no evidence that her primary care physicians were psychologists, psychiatrists, or mental health specialists and therefore the diagnoses were entitled to no particular deference under the Regulations. (*Id.*) The ALJ then explained that even assuming the diagnoses were valid, they would be analyzed under the same listings as Plaintiff's panic disorder and major depressive disorder, and that the limitations set forth in the listings criteria would be unchanged. (*Id.*) The ALJ also considered the symptoms associated with Plaintiff's mental impairments in assessing her RFC (Tr. 20-24), and specifically noted that he considered all medical opinions in arriving at Plaintiff's RFC. (Tr. 22.) As a result, Plaintiff has not demonstrated that the ALJ violated the treating physician rule. For the foregoing reasons, Plaintiff's first assignment of error does not present a basis for remand.

### 2. The ALJ Erred in Finding that Plaintiff Had Past Relevant Work.

Plaintiff argues that the ALJ erred in finding that she is capable of performing past relevant work as a hospital/nursing home cleaner. According to Plaintiff, she did not work long enough at the job for it to constitute past relevant work. For the following reasons, Plaintiff's argument is not well taken.

The term "past relevant work" means work performed (either as the claimant

actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. 20 C.F.R. § 404.1565. The work must have lasted long enough for the claimant to learn to do the job and it must have been substantial gainful activity. *Id.* If the claimant has the residual functional capacity to do her past relevant work, she is not disabled. 20 C.F.R. § 416.920.

Here, the ALJ determined that Plaintiff is capable of performing her past relevant work as a hospital/nursing home cleaner. (Tr. 27.) Plaintiff's testimony supports this finding, as she stated that she worked full-time at a nursing home for about two months and that the training for the job took one day. (Tr. 211.) Furthermore, the VE's testimony supports the ALJ's finding, as the VE testified that Plaintiff's work experience over the past 15 years included a job as a hospital/nursing home cleaner, which was classified as unskilled with a specific vocational preparation ("SVP") of two.[4] (Tr. 216-217.) The VE also testified that Plaintiff performed the job long enough to learn the techniques, acquire the information, and develop the facility needed for average performance on the job. (Tr. 217.) As a result, substantial evidence supports the ALJ's determination that Plaintiff's job as a hospital/nursing home cleaner was past relevant work.

Moreover, Plaintiff fails to show that the ALJ's alleged error in determining

---

[4] SVP ratings indicate how long it takes a worker to learn how to do his or her job at an average performance level. A rating of SVP 1 means a short demonstration is the amount of training required to learn the job, and a rating of SVP 2 means up to one month of training is required to learn the job.

15

Plaintiff's past relevant work has any impact on the outcome of her case. The ALJ made an alternative finding at Step Five of the sequential analysis that Plaintiff is capable of performing other work that exists in significant numbers in the national economy and therefore is not disabled. (Tr. 28.) Plaintiff has not challenged this finding. Thus, even if the ALJ erred in determining that Plaintiff could perform past relevant work, the ALJ's ultimate conclusion that Plaintiff is not disabled would be the same. For the foregoing reasons, Plaintiff's second assignment of error does not present a basis for remand.

### 3. The ALJ's Hypothetical Question to the VE did not Incorporate All of Plaintiff's Limitations.

Plaintiff argues that the ALJ proposed a hypothetical to the VE that did not adequately reflect Plaintiff's mental limitations. Specifically, Plaintiff contends that the ALJ erred by omitting moderate restrictions as set forth in Dr. Rivera's Mental Residual Functional Capacity Assessment. Dr. Rivera's assessment contained ten moderate limitations which Plaintiff argues the ALJ should have considered. For the following reasons, Plaintiff's argument has no merit.

It was in Section I of Dr. Rivera's RFC assessment that he found Plaintiff moderately limited in ten different areas. (Tr. 145-146.) The agency's Program Operations Manual System ("POMS"), the operational reference used by agency staff to conduct the agency's daily business, provides that "Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." POMS DI

24510.060(B)(2)(a).[5] Rather, Section III "is for recording the mental RFC determination. It is in this section that the actual mental RFC assessment is recorded." POMS DI 24510.060(B)(4)(a). "While these administrative interpretations [POMS] are not products of formal rulemaking, they nevertheless warrant respect . . . " *Washington Dep't of Soc. Servs. v. Keffeler*, 537 U.S. 371, 385 (2003). This Court has acknowledged that "Section I of the mental assessment is merely a worksheet that does not constitute the RFC assessment." *Coleman v. Astrue*, No. 3:10-cv-464, 2010 WL 4955718, *7 (N.D. Ohio Nov. 18, 2010) (White, Mag. J.); *see also Velez v. Comm'r of Soc. Sec.*, NO. 1:09-cv-715, 2010 WL 1487599, *6 (N.D. Ohio Mar. 26, 2010) (Gallas, M.J.) ("In general . . . the ALJ is not required to include the findings in Section I in formulating residual functional capacity."). In Section III of his December 2010 mental RFC assessment, Dr. Rivera concluded that Plaintiff "can perform [simple, routine tasks] in a static work setting with superficial social interaction." (Tr. 147.) The ALJ adequately accounted for these findings in his calculation of Plaintiff's RFC.[6] Accordingly, the ALJ did not err by omitting the moderate limitations assessed by Dr. Rivera in Plaintiff's RFC and in his hypothetical question to the VE. For the foregoing reasons, Plaintiff's third assignment of error does not present a basis for remand.

---

[5] The POMS is available at: https://secure.ssa.gov/apps10/poms.nsf/Home?readform (last visited Nov. 22, 2013).

[6] The ALJ found that Plaintiff retains the capacity to understand and remember simple and some complex instructions and sustain attention to complete tasks where production quotas are not critical. (Tr. 19.) He further indicated that Plaintiff can tolerate the public, co-workers, and supervisors with limited interpersonal demands in an object-focused work setting and adapt to routine changes in a static work setting. (*Id.*)

### 4. The ALJ Failed to Define Moderate Limitations and Failed to Use the VE's Testimony Based on Defined Moderate Limitations.

Plaintiff argues that the ALJ erred by failing to define the term "moderate" in proposing his hypothetical to the VE. Plaintiff further contends that the ALJ erred by not relying on the VE's testimony when responding to questions by Plaintiff's counsel. Plaintiff's argument is not well taken.

As explained above in this Court's discussion of Plaintiff's third assignment of error, the ALJ was not required to include the moderate limitations assessed by Dr. Rivera in his hypothetical to the VE. Moreover, the ALJ was not required to rely on the VE's responses to the questions presented by Plaintiff's counsel. Plaintiff's counsel asked the VE to consider a hypothetical individual with the limitations noted in Section I of Dr. Rivera's Mental RFC assessment. (Tr. 219, 145-148.) The VE opined that "[b]ased on the check marks, I think the cumulative effect would preclude full-time work." (Tr. 220.) As discussed above, Section I of the mental RFC assessment that Dr. Rivera completed is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation; it does not constitute the RFC assessment. Thus, the ALJ was not required to rely on the VE's opinion that, based on the ten moderate limitations that Dr. Rivera indicated in Section I of the mental RFC assessment, Plaintiff could not sustain employment.

Moreover, Plaintiff's argument that the ALJ erred by failing to define the term "moderate" has no merit. Since the ALJ did not mention the term "moderate" when presenting his hypothetical question to the VE, the ALJ could not have erred by failing to define a term he never used. (Tr. 217-219.) Accordingly, Plaintiff's fourth

18

assignment of error does not present a basis for remand.

### 5. The ALJ Failed to Consider Favorable Evidence and did not Consider the Entire Record.

Plaintiff raises a fifth assignment of error, arguing that the ALJ failed to consider the entire record when making his disability determination. While Plaintiff cites to certain medical records and alleges that they are "favorable" to Plaintiff and that the ALJ erred by failing to consult them, she does not develop her argument beyond this conclusory assertion. (Pl.'s Br. 7.) She includes no legal support for her argument, as she does not cite to any case law or regulations that would help guide this Court in analyzing the issue. Without reference to case law or regulations supporting Plaintiff's assertions, this Court cannot properly determine whether or not Plaintiff's fifth assignment of error has any merit. As a result of failing to explain, develop, or provide an analytical framework for this assigned error, Plaintiff has waived any argument on this point. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir.2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir.1997).

### VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: November 25, 2013

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).